# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JOANNE C. SCHNEIDER | ) | CASE NO.  1:17-CV-1475 |
| c/o ALAN C. SCHNEIDER, | ) | |
| fiduciary | ) | JUDGE |
| P.O. Box 35318 | ) | |
| Cleveland, OH 44135 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ALAN C. SCHNEIDER | ) | |
| P.O. Box 35318 | ) | **COMPLAINT** |
| Cleveland, OH 44135, | ) | |
| | ) | |
| | ) | |
| Plaintiffs | ) | Fair Debt Collection Practices Act |
| | ) | Violations; Ohio Consumer Sales |
| v. | ) | Practices Act Violations |
| | ) | |
| NATIONSTAR MORTGAGE, | ) | Jury Demand Endorsed Hereon |
| LLC | ) | |
| c/o CSC-Lawyers Incorporating | ) | |
| Service, Statutory Agent | ) | |
| 50 W. Broad Street, Ste. 1330 | ) | |
| Columbus, OH 43215, | ) | |
| | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WELLS FARGO FINANCIAL | ) | |
| AMERICA, INC. | ) | |
| c/o CSC-Lawyers Incorporating | ) | |
| Service, Statutory Agent | ) | |
| 50 W. Broad Street, Ste. 1330 | ) | |
| Columbus, OH 43215, | ) | |
| | ) | |
| | ) | |
| and | ) | |

```
                                      )
CARLISLE, MCNELLIE, RINI,             )
KRAMER AND ULRICH CO.,                )
LPA                                   )
24755 Chagrin Boulevard,              )
Suite 200                             )
Cleveland, OH 44122-5690
```

      Defendants.

## JURISDICTION AND VENUE

1.     This is a civil action arising under the laws of the State of Ohio and under the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. §§ 1692-1692p, to obtain monetary civil penalties, a declaratory judgment, and other equitable relief for violations of the FDCPA by Nationstar Mortgage, LLC ("Nationstar"), Wells Fargo Financial America, Inc. ("Wells Fargo") and Carlisle, McNellie, Rini, Kramer, and Ulrich Co., LPA ("Carlisle").

2.     This Court has jurisdiction over this matter under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331, 1337(a).

3.     Venue is proper because all of Defendants' wrongful conduct complained of occurred in Cuyahoga County, Ohio, which is in the Northern District of Ohio.

## PARTIES

4.     Defendant Nationstar Mortgage, LLC ("Nationstar") is a Delaware Corporation registered to do business in the State of Ohio.

5.      Defendant Wells Fargo Financial America, Inc. ("Wells Fargo") is a Pennsylvania Corporation registered to do business in the State of Ohio.

6.      Defendant Carlisle, McNellie, Rini, Kramer, and Ulrich Co., LPA ("Carlisle") is an Ohio Legal Partnership Association registered to do business in the State of Ohio.

7.      Plaintiff, Joanne C. Schneider ("Joanne") is an individual residing in the State of Ohio.

8.      Plaintiff, Alan C. Schneider ("Alan") is an individual residing in the State of Ohio.

9.      Plaintiffs, at all times relevant, are legally married.

10.     This matter involves two loans secured by real property located in Cuyahoga County and subject to a receivership granted through the Cuyahoga County Court of Common Pleas in *Bradley v. Schneider*, Cuyahoga County Common Pleas Case No. CV-04-548887 (the "Receivership Case").

11.     These loans encumbered 12660 Pebblebrook Trail, North Royalton, Ohio, 44133 ("Pebblebrook"), and known as Parcel No. 481-02-063 in the Cuyahoga County Recorder's Office.

12.     The Schneiders lived in the Pebblebrook house as their primary residence.

13.     These loans were executed by Alan and Joanne.

3

14.    For the reasons set forth in the preceding paragraphs, subject matter jurisdiction, personal jurisdiction, and venue are appropriate in this Court.

**FACTS**
Norwest Mortgage and Delta/Countrywide Mortgage

15.    On October 4, 1990, Alan and Joanne executed and recorded an Open-End Mortgage to the benefit of Norwest Financial Ohio 1 ("Norwest"), recorded at the Cuyahoga County Recorder's Office as Instrument No. 970565 Volume 90-6127, Pages 55-56.  (Exhibit A.)

16.    The Norwest Mortgage was taken out for personal, family, and household purposes on the Schneiders' primary residence.

17.    On May 22, 2000, Alan and Joanne executed and recorded a Mortgage to the benefit of Delta Funding Corporation ("Delta"), recorded at the Cuyahoga County Recorder's Office as Instrument No. 200005220665.  (Exhibit B.)

18.    The Delta Mortgage was taken out for personal, family, and household purposes on the Schneiders' primary residence.

19.    On May 22, 2000, Norwest executed and recorded a Subordination of Mortgage to the benefit of Delta, recorded at the Cuyahoga County Recorder's Office as Instrument No. 200005220666.  (Exhibit C.)

20.    On June 14, 2000, Norwest executed and recorded a corrected Subordination of Mortgage to the benefit of Delta, recorded at the Cuyahoga County Recorder's Office as Instrument No. 200006140137.  (Exhibit D.)

21.    On August 2, 2001, Delta executed and recorded an Assignment of Mortgage to the benefit of Countrywide Home Loan as Servicer, on Behalf of Wells Fargo Minnesota, N.A., as Trustee for the Delta Funding HEL Trust 2000-2 ("Countrywide"), recorded at the Cuyahoga County Recorder's Office as Instrument No. 200108020898.  (Exhibit E.)

<u>The Receivership Case Stay and Recorded Affidavit of Facts</u>

22.    On February 7, 2005, in the Receivership Case, Judge Villanueva ordered the creation of a receivership and the freezing of Alan and Joanne's assets. The Court appointed Matthew L. Fornshell as receiver ("Fornshell").

23.    On or about February 28, of 2005, the Court ordered a Stay in the Receivership Case in its Amended Order Appointing Receiver, preventing creditors from commencing any collection activities against Alan and Joanne.

24.    On August 1, 2005, Fornshell recorded an Affidavit of Facts Relating to Title at the Cuyahoga County Recorder's Office as Instrument No. 200508010271 (Exhibit F), which encumbered Parcel 481-02-063 (Pebblebrook).

25.    The Affidavit of Facts Relating to Title referenced a Stay issued by the Receivership Case judge which prevented creditors from commencing any legal action or foreclosure against the property.  (*See* Exhibit F, at page 2.)

Wells Fargo and Carlisle's Attempt to Lift Stay

26.    On August 23, 2005, Carlisle attorney James Sassano ("Sassano"), on behalf of Wells Fargo (specifically Wells Fargo Financial Ohio 1, Inc., Successor by Merger with Norwest Financial Ohio 1, Inc.) ("Wells Fargo: Norwest"), filed a *Motion to Intervene and Obtain Relief from the Stay of Proceedings* in the Receivership Case. (Exhibit G.)

27.    Sassano proclaimed that Wells Fargo: Norwest sought to foreclose on the property, but needed to have the court-ordered Stay lifted.  Sassano attached a Preliminary Judicial Report, ordered by Carlisle, to the August 23, 2005, motion as evidence of Wells Fargo: Norwest's desire to foreclose on the property.

28.    On August 30, 2005, Fornshell filed *Receiver's Reply to Wells Fargo Financial Ohio 1, Inc.'s, Successor by Merger with Norwest Financial Ohio 1, Inc., Motion to Intervene and Obtain Relief from the Stay of Proceedings.* (Exhibit H.) The filing approved of Wells Fargo's request to intervene, stated the property would be sold at auction, and was served on Carlisle through Sassano.

<u>The Receivership's Sale of 12660 Pebblebrook</u>

29.    On November 17, 2005, Fornshell filed *Receiver's First Amended Fifth Motion for an Order Authorizing Him to Sell Real Property of the Receivership Estate to Proposed Purchasers Free and Clear of Liens, Claims, and Encumbrances, and to Transfer the Interests of Lienholders to the Proceeds of the Sales.* (Exhibit I).  This filing included a request to sell the Pebblebrook property.

30.    On January 19, 2006, Fornshell executed a Fiduciary Warranty Deed transferring the Pebblebrook Property to a new buyer, free and clear of all encumbrances.  (*See* Cuyahoga County Recorder's Instrument No. 200601190155, attached as exhibit J.)

<u>Wells Fargo and Carlisle's Failure to Acquire 90% of the Value of the Norwest Mortgage and Delta/Countrywide Mortgage</u>

31.    About 3 months after the sale of the house, Carlisle attempted to recover the funds from the sale.

32.    On March 16, 2006, Sassano, on behalf of Wells Fargo: Norwest, filed a *Motion of Wells Fargo Financial Ohio 1, Inc., Successor by Merger with Norwest Financial Ohio 1, Inc. (Wells Fargo), for Disbursement of Funds from the Sale of 3839 West 162nd Street, Cleveland, and 12660 Pebblebrook Trail, North Royalton* in the Receivership Case. (Exhibit K.)[1]

---

[1] Only one page is available from the Court's online docket.

33.     On April 2, 2007, Fornshell filed *Receiver's Response to Motion of Wells Fargo Financial Ohio 1, Inc. for Disbursement of Funds.*  This filing instructed Carlisle, Sassano, and Wells Fargo to follow a Plan of Distribution, which was already filed by the receiver, to recover proceeds from the sale. (Exhibit L.)  This document was served on Carlisle and Sassano.

34.     On page 2 of the April 2, 2007 Receiver's response, the receiver points out the following: "The particular request by Wells Fargo Financial Ohio 1, Inc. is also deficient in that it fails to differentiate between the two separate pieces of property and the debt allocable to each." (*See* Exhibit L, at p. 2.)

35.     On December 21, 2007, Judge Villanueva approved of Fornshell's receivership distribution plan in his *Findings and Order of Distribution.* (Exhibit M.)

36.     The *Findings and Order of Distribution,* on page 11, provided secured creditors with a 30-day deadline (January 21, 2008) to file a claim.

37.     On September 17, 2008, Fornshell filed *The Receiver's Proposed Distribution of Sale Proceeds to Non-Investor Claimants.* (Exhibit N.)

38.     On January 12, 2009, Fornshell filed a *Supplement to the Receiver's Proposed Distribution of Sales Proceeds to Non-Investor Claimants.* (Exhibit O.) This filing stated that Carlisle, Sassano, and Wells Fargo failed to file a claim by January 21, 2008, and did not file a claim until November 4, 2008, or about 9

months after the deadline and a month and a half after *The Receiver's Proposed Distribution of Sale Proceeds to Non-Investor Claimants*. This document was served on Carlisle and Sassano.

39.   On January 26, 2009, Sassano, on behalf of Wells Fargo: Norwest, filed a *Response of Wells Fargo Financial and Countrywide Home Loans, Inc. to the Receiver's Supplement to Proposed Distribution* in the Receivership Case. (Exhibit Q.)

40.   Sassano's January 26, 2009 *Response* appears to be the first time Countrywide is mentioned in the case.

41.   Sassano's January 26, 2009, *Response* states, "On August 24, 2005 Wells Fargo, acting as the servicing agent for CHL and as the holder of its own mortgages, filed a Motion to Intervene in this case, Wells Fargo also sought relief from the Court's stay order so it could proceed with foreclosure on both properties." (Exhibit Q, at p. 2.)

42.   It appears that Sassano was responding in the January 26, 2009, *Response* on behalf of both Wells Fargo: Norwest (as it relates to their interest in the October 4, 1990 Norwest Mortgage) and Countrywide or "CHL" (as it relates to their interest in the May 22, 2000 Mortgage, which was assigned to them on August 2, 2001).

43.     Wells Fargo, Carlisle, Sassano, and (by implication in the January 26, 2009, *Response*, which mentions "CHL" being involved as early as August 2, 2005), Countrywide failed to follow distribution instructions that numerous other secured creditors followed.

44.     Sassano also states in his January 26, 2009 *Response*, "Wells Fargo and CHL did submit their claim forms to the Receiver after the Receiver's deadline." (Exhibit Q, at p. 3.)

45.     On April 13, 2009, Fornshell filed *The Receiver's Motion to File Instanter A Corrected Supplemental Memorandum in Support of the Receiver's Proposed Distribution of Sale Proceeds to Non-Investors*. (Exhibit R.)  This filing stated, "Secured Claims are to be paid in full minus the Secured Creditor Allocation." (Exhibit R, at p. 11.) This document states the Secured Creditor Allocation to be 10%, which means secured creditors would have received 90% of their claim amount.  This document was served on Carlisle and Sassano.

46.     On April 14, 2009, Sassano filed *Countrywide Home Loans, Inc.'s Motion to Intervene*.  (Exhibit S.)  This filing states that "Countrywide only recently learned of this action."  (*Id.*, at p. 2.)  The Delta/Countrywide Mortgage filed on May 22, 2000 was attached to this filing as an exhibit.

47.     It does not appear from the filings that any of Wells Fargo's or Countrywide's motions were granted.

48.     Due to the failure of Wells Fargo, Countrywide, and Carlisle to file their claim during the distribution period, both Wells Fargo-Norwest's mortgage and Countrywide's mortgage were discharged without receiving 90% of the value of those mortgages.

49.     At the time of filing of this Complaint, Case No. CV-04-548887 and the Receivership remain active and the Stay has not been lifted.

<u>Wells Fargo's Interest in both the Norwest Mortgage and the Delta/Countrywide Mortgage</u>

50.     Wells Fargo became successor to the noteholder for both the Norwest Mortgage and the Delta/Countrywide Mortgage under the following titles:

a.  As to the Norwest Mortgage (dated October 4, 1990): *Wells Fargo Financial Ohio 1, Inc., Successor by Merger with Norwest Financial Ohio 1, Inc.*

b.  As to the Delta/Countrywide Mortgage (dated May 22, 2000): *Countrywide Home Loan as Servicer, on Behalf of Wells Fargo Minnesota, N.A., as Trustee for the Delta Funding HEL Trust 2000-2.*

<u>The Servicing of the Delta/Countrywide Mortgage: Countrywide transferred to Bank of America and then to Nationstar</u>

51.     Wells Fargo appeared to transfer servicing of the Delta/Countrywide Mortgage from Countrywide (presumably because Countrywide went bankrupt) to

Bank of America, NA, as evidenced in the attached Notice of Intent to Accelerate, which was sent to Joanne C. Schneider on July 8, 2013. (Exhibit T.)

52.   Exhibit T shows that no payment was made on the Delta/Countrywide Note since February 22, 2005, which is within a week of when the Receivership Case froze all of Alan and Joanne's assets.

53.   On November 13, 2013, Nationstar Mortgage informed Alan and Joanne that they had taken over servicing from Bank of America.  (*See* Exhibit U.)

<u>Plaintiffs' Notifications to Bank of America/Nationstar regarding the
Delta/Countrywide Mortgage</u>

54.   Wells Fargo, through Bank of America and Nationstar, despite the Receivership and Stay, made repeated attempts from 2005 to 2017 to collect the debt from both the Norwest and Delta/Countrywide Notes.

55.   On May 2, 2013, May 15, 2013, and June 5, 2013, Attorney Matthew Nee ("Nee") was contacted by Bank of America regarding Nee's application to be Power of Attorney on the Delta/Countrywide Mortgage. (Exhibit V.)

56.   On October 15, 2014, Nee sent Nationstar Mortgage a letter (Exhibit W), which demanded that Nationstar do the following:

   a.  Cease all efforts to enforce any obligation against Joanne and the Property;

   b.  Cease contacting her related to the Property;

c.  Cease all negative reporting to credit bureaus;

d.  Take all steps necessary to undo negative credit reporting;

e.  Provide the name and address of the original creditor;

f.  Provide original documentation showing that Joanne was liable to the original creditor;

g.  Provide an itemized calculation of the principal, interest, penalties, and any other amounts that constitute the debt that Joanne owed; and

h.  Provide verification, including license number and registered agent, that it was licensed to collect assigned debts in Ohio.

57.  The letter contained as attachments the following:

a.  A June 23, 2011, letter from the Plaintiffs to Associated Credit Services, Inc., disputing the alleged debt from an unknown Wells Fargo Note and Mortgage, and invoking their rights under Section 805(c) of the FDCPA, 15 U.S.C. § 1692c, to demand that Associated Credit Services, Inc. cease further communication with them with respect to such debts.  (*See* Exhibit X.)

b.  A 2012 IRS 1099-C, Cancellation of Debt for Alan Schneider, which released $111,381.92 worth of interest off of a Wells Fargo Bank, N.A., mortgage.  (*See* Exhibit Y.) This 1099-C appears to be for the

interest on the Norwest Mortgage and not the Delta/Countrywide Mortgage.

58.     On October 20, 2014, Nee received a USPS Return Receipt proving that Nationstar received the October 15, 2014 letter with its attachments. (Exhibit Z.)

### Nationstar's Communications with Plaintiffs after Attorney Contact

59.     Nationstar ignored the communication from Nee and continued sending correspondence to the Plaintiffs, including documents sent on November 14, 2014; April 23, 2015; April 24, 2015; May 26, 2015; May 27, 2015; June 23, 2015; June 24, 2015; July 23, 2015; July 24, 2015; August 25, 2015; August 26, 2015; September 21, 2015; September 23, 2015; September 24, 2015; October 23, 2015; October 24, 2015; November 12, 2015; November 24, 2015; November 25, 2015; December 23, 2015; and February 23, 2016. (Collectively, Exhibit A2.)

60.     Many of the communications are notifications that Nationstar was placing homeowner's insurance on a residence that Wells Fargo and Carlisle knew was sold about 10 years prior.  The cost of the homeowner's insurance was added to the Plaintiffs' outstanding total.

61.     On March 16, 2016, Nationstar sent Plaintiffs a letter describing themselves as a "Debt Collector."  (Exhibit B2.)  Nationstar attached to this letter a copy of Plaintiffs' June 23, 2011, letter to Associated Credit Services (*see* Exhibit

X) and the 2012 IRS 1099 C Discharge of Interest for Alan Schneider (*see* Exhibit Y).

62.    The March 16, 2016, letter lists Nationstar as the mortgage loan servicer for "Wells Fargo Bank National Association, as Trustee for Delta Funding Corporation Home Equity Loan Asset-Backed Certificates Series 2000-2."

63.    Nationstar sent communications to the Plaintiffs on March 23, 2016; March 24, 2016; April 22, 2016; April 25, 2016; May 4, 2016; May 24, 2016; May 25, 2016; June 2, 2016; June 20, 2016; June 23, 2016; June 24, 2016; and June 27, 2016 (Collectively, Exhibit C2.)

<u>Plaintiffs' July 8, 2016, Cease and Desist Letter to Nationstar</u>

64.    On July 8, 2016, Plaintiffs sent a cease and desist letter to Nationstar. (Exhibit D2.)  The letter included a copy of counsel's October 15, 2014, letter, the Stay, the June 23, 2011 cease and desist letter, and the IRS 1099-C cancellation of debt. Also included in this letter, was a copy of the cease and desist letter Plaintiff sent to Associated Credit Services, Inc., which at the time was attempting to collect the Note on behalf of Wells Fargo.

65.    On July 13, 2016, Plaintiffs received a Return Receipt from the USPS certifying delivery to Nationstar. (Exhibit E2.)

<u>Nationstar's Communications with Plaintiffs after Receipt of Certified July 8,
2016, Letter and Acknowledgement of Same</u>

66.    Nationstar sent communications to the Plaintiffs on July 14, 2016;
July 19, 2016; July 22, 2016; July 25, 2016; July 26, 2016; and July 31, 2016.
(Collectively, Exhibit F2.)

67.    Nationstar sent Joanne a letter on July 20, 2016, which stated
"Nationstar Mortgage LLC (Nationstar) received your correspondence dated July
8, 2016, regarding concerns with the above-referenced account." (Exhibit G2.)

<u>Carlisle's Collection Letter Which Appears to Confuse the Norwest Mortgage and
the Delta/Countrywide Mortgage</u>

68.    On July 22, 2016, Carlisle sent a collection letter on behalf of Wells
Fargo to Plaintiff. (Exhibit H2.)   The letter states "WELLS FARGO BANK,
NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO WELLS FARGO
BANK MINNESOTTA [sic], NATIONAL ASSOCIATION F/K/A NORWEST
BANK MINNESOTA, NATIONAL ASSOCIATION, AS TRUSTEE FOR Delta
FundIng [sic] Corporation Home Equity Loan Asset-Backed Certificates, Series
2000-2 C/O Nationstar is the creditor to whom the debt is owed"

69.    Carlisle's letter lists the outstanding debt owed as being $329,229.16
(Exhibit H2), which is almost the exact amount claimed by Nationstar on just the
Delta/Countrywide Mortgage.  Nationstar's statements on July 19, 2016, and July
22, 2016, state the total debt owed to be $331,051.29. (*See* Exhibit F2, p. 2.)

70.    Carlisle lists "Norwest," and not Countrywide, in the description of the creditor.

71.    It appears that Carlisle was confusing the Norwest Mortgage and the Delta/Countrywide Mortgage.

72.    Carlisle's letter states, "Carlisle, McNellie, Rini, Kramer & Ulrich Co., L.P.A. is not required to wait until the end of the 30 days described above before filing a foreclosure action or taking other action to collect the debt.  Any future action taken by Carlisle, McNellie, Rini, Kramer & Ulrich Co., L.P.A., including the filing of a foreclosure action, does not terminate or limit the 30-day period you have to: dispute the debt or any portion of the debt, to request verification of the debt, or to request the name of the original creditor."  (Exhibit H2, at p. 2.)

### Plaintiffs' July 31, 2016, Cease and Desist Letter to Carlisle

73.    Plaintiffs sent Carlisle a cease and desist letter on July 31, 2016. (Exhibit I2.)

### Nationstar's Communications with Plaintiffs after Acknowledgement of Plaintiffs' July 31, 2017, Cease and Desist Letter to Carlisle

74.    Nationstar sent a letter to Joanne on September 1, 2016, which stated, "Nationstar Mortgage LLC (Nationstar) is in receipt of your correspondence dated

July 31, 2016, in which concerns regarding the above referenced account were brought to our attention." (Exhibit J2.)

75.    Nationstar sent communications to the Plaintiffs after their July 31, 2016, letter to Carlisle on August 16, 2016; August 23, 2016; August 24, 2016; August 29, 2016; September 6, 2016; September 21, 2016; September 23, 2016; September 24, 2016; October 14, 2016; October 26, 2016; November 14, 2016; November 23, 2016; November 24, 2016; December 23, 2016; December 24, 2016; January 24, 2017; January 25, 2017; January 26, 2017; and February 27, 2017 (Collectively attached as Exhibit K2).

<u>Carlisle's Affidavit Denying Any Prior Knowledge that Joanne<br>was Represented by Counsel</u>

76.    Carlisle and Sassano filed an Affidavit on May 18, 2017, in now dismissed Cuyahoga County Case No. CV 17-876421. (Exhibit L2.)

77.    Sassano swore in that Affidavit that Carlisle had no prior knowledge that Joanne was represented by counsel.

78.    As of when Alan and Joanne filed this complaint, Nationstar, Wells Fargo, and Carlisle, have not provided Plaintiffs with proof of which mortgage they were attempting to collect.

79.    As of when Alan and Joanne filed this complaint, Nationstar, Wells Fargo, and Carlisle, have not provided Plaintiffs with proof of who the original creditor is of the debt they were trying to collect.

## CLAIMS FOR RELIEF
### Allegations common to all claims

80.    Plaintiffs restate the preceding allegations, as if fully rewritten.

81.    Plaintiffs are "consumers" within the meaning of 15 U.S.C. §1692a(3).

82.    Plaintiffs are also "consumers" as spouses of each other under 15 U.S.C. § 1692c(d).

83.    Nationstar, Wells Fargo, and Carlisle are debt collectors, as defined in § 803(6) of the Fair Debt Collections Practices Act ("FDCPA") and within the meaning of 15 U.S.C. § 1692a(6).

### COUNT I: Wells Fargo and Nationstar
#### (Fair Debt Collections Practices Act, 15 U.S.C. §1692c(a)(2)), 15 U.S.C. §1692c(c)), 15 U.S.C. §1692f(1), and U.S.C. §1692f(6)(A)(B)(C)

84.    Plaintiffs restate the preceding allegations, as if fully rewritten.

85.    On November 20, 2014, and July 13, 2016, Wells Fargo, by and through its agent Nationstar, received Cease and Desist Letters in which Plaintiffs informed Nationstar that it was represented by Attorney Matthew Nee.  Both communications were sent by Certified USPS mailing.

86.    On July 14, 2016; July 19, 2016; July 20, 2016; July 22, 2016; July 25, 2016; July 26, 2016; July 31, 2016; August 16, 2016; August 23, 2016; August 24, 2016; August 29, 2016; September 6, 2016; September 21, 2016; September 23, 2016; September 24, 2016; October 14, 2016; October 26, 2016; November 14,

2016; November 23, 2016; November 24, 2016; December 23, 2016; December 23, 2016; January 24, 2017; January 25, 2017; January 26, 2017; and February 27, 2017, Wells Fargo, by and through Nationstar, sent communications after they were notified that Plaintiffs were represented by counsel and were told to Cease and Desist.

87.    In each of these communications, Wells Fargo and Nationstar demanded payment of the sums allegedly owed.

88.    Wells Fargo and Nationstar continued to directly communicate with the Plaintiffs after being informed they were represented by counsel in violation of 15 U.S.C.  §1692c(a)(2)).

89.    Wells Fargo and Nationstar continued to directly communicate with the Plaintiffs after being informed to Cease and Desist in violation of 15 U.S.C. §1692c(c).

90.    Wells Fargo and Nationstar demanded payment from the Plaintiffs in an amount including Homeowner's Insurance for a property that was sold 12 years earlier. (*See* Nationstar's Statement of February 27, 2017; Exhibit K2, at pp. 30-32) which stated a charge of $2,039 for the insurance.)

91.    Wells Fargo's and Nationstar's attempt to collect from the Plaintiffs a fee for Homeowner's Insurance on a house that was long ago sold was an attempt to collect a fee not allowed by law and a violation of 15 U.S.C. §1692f(1).

92.     Wells Fargo's and Nationstar's threat to take non-judicial action to foreclose on the Pebblebrook property, when (1) they had no present right to possess the property since their interest was judicially transferred in the receivership, (2) they had no present intention to foreclose, and (3) the property was exempt by law from foreclosure, was in violation of 15 U.S.C. §1692f(6)(A)(B)(C).

93.     Plaintiffs have suffered emotional distress as a result of Wells Fargo's and Nationstar's actions.

94.     Plaintiffs are entitled to actual damages and statutory damages in the amount of $1,000 per Plaintiff from each Defendant for Wells Fargo's and Nationstar's violations of the Fair Debt Collections Practices Act, 15 U.S.C. §1692c(a)(2)), §1692c(c)), §1692f(1), and §1692f(6)(A)(B)(C).

95.     Plaintiffs are entitled to receive the costs of this action and attorney's fees pursuant to 15 U.S.C. §1692k(a)(3).

<u>COUNT II: Carlisle</u>
<u>(Fair Debt Collections Practices Act, 15 U.S.C.  §1692c(c)), 15 U.S.C.</u>
<u>§1692e(2)(A), 15 U.S.C.  §1692e(5)), and U.S.C. §1692f(6)(A)(B)(C)</u>

96.     Plaintiffs restate the preceding allegations, as if fully rewritten.

97.     As demonstrated above, Carlisle and Sassano were aware of the following:

a.  A court-ordered stay was and is currently in place, preventing any debt-collection activities;

b.  They could not legally foreclose on the property;

c.  The property was sold with the interests of secured creditors transferred to the Receivership;

d.  The secured creditor (Wells Fargo) could have received 90% of the value of both mortgages;

e.  Wells Fargo failed to follow basic instructions and was nine months late in filing its claim with the Receivership so the Court prevented it from collecting on its debt;

f.  Plaintiffs were, at all times during Carlisle's involvement, represented by counsel, and Carlisle could have easily contacted Plaintiffs' original counsel first to discover who currently represented them;

g.  There was no legal method for Carlisle to collect the debts.

h.  Wells Fargo had an interest in both the Norwest Mortgage and Delta/Countrywide Mortgage.

98.  Carlisle sent its July 22, 2016, debt collection letter with knowledge that the Plaintiffs were represented by counsel in violation of 15 U.S.C. §1692c(c)).

99.    Carlisle sent its July 22, 2016 debt collection letter, which misstated the legal status of the debt because it was already disposed of in the Receivership and not collectable in violation of 15 U.S.C. §1692e(2)(A)).

100.    Carlisle sent its July 22, 2016, debt collection letter, which threatened foreclosure, in direct violation of a court-ordered Stay that prevented its first foreclosure attempt in violation of 15 U.S.C. §1692e(5)).

101.    Carlisle sent its July 22, 2016 debt collection letter showing an amount owed of $329,229.16 for the Delta/Countrywide Mortgage but actually identified the Creditor as the Norwest Mortgage which was a false representation in direct violation of 15 U.S.C. §1692e(10)).

102.    Carlisle's threat to take non-judicial action to foreclose on the Pebblebrook property, when (1) they had no present right to possess the property since their interest was judicially transferred in the receivership, (2) they had no present intention to foreclose, and (3) and the property was exempt by law from foreclosure, was in violation of 15 U.S.C. §1692f(6)(A)(B)(C).

103.    Plaintiffs have suffered emotional distress as a result of Defendant Carlisle's actions.

104.    Plaintiffs are entitled to actual damages and statutory damages in the amount of $1,000 per Plaintiff for Carlisle's violations of the Fair Debt Collections

Practices Act, 15 U.S.C. §1692c(a)(2)), §1692c(c)), §1692f(1), and §1692f(6)(A)(B)(C).

105.   Plaintiffs are entitled to receive the costs of this action and attorney's fees pursuant to 15 U.S.C. §1692k(a)(3).

<u>COUNT III – Wells Fargo and Carlisle</u>
<u>(Ohio Consumer Sales Practices Act, Ohio Rev. Code Chapter 1345)</u>

106.   Plaintiffs restate the preceding allegations, as if fully rewritten.

107.   Wells Fargo and Carlisle are "Suppliers" under the Ohio Consumer Sales Practices Act (the "CSPA).  (*See* R.C. 1345.01 (C) and R.C. 1345.091.)

108.   Plaintiffs are "Consumers" under the CSPA.  (*See* R.C. 1345.01(D).)

109.   The Norwest Mortgage and the Delta/Countrywide Mortgage are "Consumer Transactions," under the CSPA. (*See* R.C. 1345.01 (A) and R.C. 1345.091.)

110.   In Carlisle's letter (*see* Exhibit H2), Carlisle states the creditor as "WELLS FARGO BANK, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO WELLS FARGO BANK MINNESOTTA [sic], NATIONAL ASSOCIATION F/K/A NORWEST BANK MINNESOTA, NATIONAL ASSOCIATION, AS TRUSTEE FOR Delta FundIng [sic] Corporation Home Equity Loan Asset-Backed Certificates, Series 2000-2 C/O Nationstar."

111.   Carlisle mentions both "Norwest" and "Delta Funding."   Since Carlisle does not mention Countrywide in its letter, and has not provided a

response to Schneider's demand to know the original creditor and amount, Carlisle appears to be collecting on the second, open-ended Norwest Mortgage.

112.    Since the debt at issue here appears to include a second or open-ended mortgage, it would fall under the Small Loan Act, Ohio Rev. Code 1321.51.  Ohio Rev. Code 1321.591 subjects all second open-ended mortgages to the FDCPA and OCSPA.  Ohio permissibly expanded consumer protections in the FDCPA/OCSPA to second or open-ended mortgages.

113.    Since the debt at issue here also includes the Delta/Countrywide Mortgage, the Plaintiffs argue Delta Funding meets the "Nonbank Mortgage Lender" definition under the CSPA.

114.    The now defunct Delta Funding was known as a company that sold non-conforming mortgages through telemarketing.

115.    According to the Wikipedia page for Delta Financial Corporation (*see* Exhibit M2), it sold sub-prime loans that did not satisfy standards of more traditional lenders.  It did not appear to be a bank, savings bank, savings and loan association, credit union, or credit union service organization.

116.    Since Delta Financial Corporation, a non-bank, is the mortgagee who originated part of the debt Wells Fargo and Carlisle were collecting, a "consumer transaction" occurred under the CSPA.

117.   Under 1345.091, an assignee who commits a CSPA violation and is in common control with the seller of the loan at time of such assignment or purpose is subject to the CSPA.

118.   Since Carlisle is a debt collector attempting to collect a second or open mortgage debt subject to the CSPA and a non-bank mortgage debt, Carlisle is subject to the CSPA.

119.   The improper, illegal, and abusive debt collection practices committed by Wells Fargo and Carlisle are violations of the Fair Debt Collection Practices Act which constitute unfair and deceptive practices under the Ohio Consumer Sales Practices Act at R.C. 1345.02.

120.   Wells Fargo's and Carlisle's actions constitute unconscionable consumer sales acts or practices under the Ohio Consumer Sales Practices Act at R.C. 1345.03.

121.   Violations of the FDCPA violate the CSPA under R.C. 1345.02.  (*See Becker v. Montgomery, Lynch*, 2003 W.L. 23335929, 2003 U.S. Dist. LEXIS 24992 (2003) (holding that "any violation of any one of the enumerated sections of the FDCPA is necessarily an unfair and deceptive act or practice in violation of R.C. § 1345.02").)

122.   Plaintiffs have suffered emotional distress as a result of Wells Fargo's and Carlisle's actions.

123.   Plaintiffs are entitled to actual damages and non-economic damages in the amount of $5,000 per defendant under R.C.  1345.09(A) for Wells Fargo's and Carlisle's violations.

124.  Plaintiffs are entitled to three times the amount of their actual damages plus an amount not to exceed $5,000 under R.C. 1345.09(B).

125.  Wells Fargo and Carlisle knowingly violated the CSPA, especially given the additional Federal Regulations to which debt collectors are subject and which Wells Fargo and Carlisle also violated.  Therefore, Plaintiffs are entitled to attorney's fees under R. C. 1345.09(F)(2).

**WHEREFORE,** Plaintiffs pray that they be awarded judgment against Defendants as follows:

a. Plaintiffs pray for declaratory relief that Defendants' practices violated the Fair Debt Collection Practices Act; and

b. Plaintiffs pray for declaratory relief that Defendants Wells Fargo and Carlisle's practices violated the Ohio Consumer Sales Practice Act; and

c. Plaintiffs pray for a judgment against Nationstar, Wells Fargo, and Carlisle, jointly and severally, in the amount of their actual damages, in the amount of $6,000 in statutory damages for FDCPA violations ($1,000 per Plaintiff per Defendant); and

d. Plaintiffs pray for judgment against Wells Fargo and Carlisle for OCSPA violations in the amount of their actual damages, trebles damages, and $5,000 in statutory damages; and

e. Plaintiffs pray for an award of punitive damages against Wells Fargo and Carlisle for unconscionable OCSPA violations in an amount to be determined by the Court; and

f. Plaintiffs pray for an award of attorney's fees against Nationstar, Wells Fargo, and Carlisle for FDCPA and OCSPA violations in an amount to be determined by the Court; and

g. Plaintiffs pray for an award of the costs of this action; and

h. Plaintiffs pray for whatever other relief this Court deems just and necessary.

Respectfully submitted,

/s/ David J. Zelenka
David J. Zelenka (0081263)
Matthew M. Nee (0072025)
**Nee Law Firm, LLC**
Regency Centre
26032 Detroit Rd., Ste. 5
Westlake, Ohio 44145
440.793.7720 | 440.793.7920 (f)
dave@neelawfirm.com
matt@neelawfirm.com
*Attorneys for Plaintiffs*

## JURY DEMAND

Plaintiffs demand a trial by jury.


/s/ David J. Zelenka
David J. Zelenka (0081263)


## Certificate of Service

I certify that the foregoing **Complaint** was filed on July 14, 2017.  All parties will be notified of this filing, and will have access to this filing, via the Court's electronic filing system.

/s/ David J. Zelenka
David J. Zelenka (0081263)